UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| **JASSID TILLMAN,**<br><br>*Plaintiff*,<br><br>v.<br><br>**SUNUP FINANCIAL, LLC and CAPITAL COMMUNITY BANK, INC.,**<br><br>*Defendants*. | Case Number:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**COMES NOW** the Plaintiff, **Jassid Tillman** ("**Mr. Tillman**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, **SunUp Financial, LLC**, doing business as **Balance Credit** ("**SunUp**"), and **Capital Community Bank, Inc.** ("**CCB**") (jointly, the "**Defendants**"), stating as follows:

**PRELIMINARY STATEMENT**

1. This is an action by Mr. Tillman against the Defendants for violations of the *Racketeer Influenced and Corrupt Organizations Act*, 18 U.S.C. § 1961, *et seq.* ("**RICO**"), the *Florida Consumer Collection Practices Act*, Fla. Stat. § 559.55, *et seq.* ("**FCCPA**"), the Florida *Civil Remedies for Criminal Practices Act*, Fla. Stat. § 772.101, *et seq.* ("**CRCPA**"), and for unjust enrichment.

Page **1** of **24**

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's RICO claims arises under 18 U.S.C. § 1965 and 28 U.S.C. § 1331, as RICO is a federal statute, and the relevant transactions were committed within Broward County, Florida.

3. This Court has supplemental jurisdiction over Plaintiff's CRCPA and FCCPA claims under 28 U.S.C. § 1367.

4. The Defendants are subject to the jurisdiction of this Court pursuant to Fla. Stat. § 48.193 and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and/or caused by the Defendants within the Southern District of Florida.

## PARTIES

### Mr. Tillman

6. **Mr. Tillman** is a natural person residing in the City of Coral Springs, Broward County, Florida.

7. Mr. Tillman is a *Consumer* as defined by the FCCPA, Fla. Stat. § 559.55(8).

### SunUp

8. **SunUp** is a Delaware limited liability company with a primary business address of **33 N LaSalle St., Suite 800, Chicago, IL 60602**.

9. SunUp's Florida registered agent is **CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324**.

## CCB

10. **CCB** is a Utah corporation with a principal business address of **3280 N. University Ave., Provo, UT 84604**.

11. CCB's Utah registered agent is **Matthew Field, 3280 N. University Ave., Provo, UT 84604**.

## FACTUAL ALLEGATIONS

12. Around February 23, 2021, Mr. Tillman obtained a Balance Credit loan from the Defendants in the amount of $2,509.10.

13. The interest rate on the loan was 224% annually. **SEE PLAINTIFF'S EXHIBIT A.**

14. Mr. Tillman was required to repay $8,887.58 for the $2,509.10 loan. *Id.*

15. Mr. Tillman repaid the loan in full around March 11, 2021.

16. Around July 26, 2021, Mr. Tillman obtained another Balance Credit loan for $3,010.85, which had an annual interest rate of 224.01%. **SEE PLAINTIFF'S EXHIBIT B.**

17. Mr. Tillman repaid this loan in full around August 21, 2021. *Id.*

18. Around November 29, 2021, Mr. Tillman obtained another Balance Credit loan for $3,010.85, which had an annual interest rate of 214.01%. **SEE PLAINTIFF'S EXHIBIT C.**

19. Upon information and belief, Mr. Tillman made five payments of $264.28 to the Defendants, for a total of $1,321.40.

20. Around April 2022, SunUp sold the loan to a third-party debt buyer/debt collector.

21. In Florida, extensions of credit issued by SunUp are purportedly made through CCB, a small bank located in Provo, Utah.

22. However, as explained in more detail below, CCB had virtually no involvement in the underwriting or approval of Mr. Tillman's loans.

23. Likewise, CCB had no involvement in the billing, collection, or servicing of the loans.

24. CCB did, however, knowingly participate in the scheme outlined below and profited from it.

25. The money used to fund the extensions of credit SunUp made to Mr. Tillman overwhelmingly belonged to SunUp, its subsidiaries, and/or its investors, and not to CCB.

26. SunUp and its related non-bank parent companies and subsidiaries were the entities which provided notices to Mr. Tillman, as required by law, such as adverse reaction notices, agreements, and billing statements.

27. SunUp holds all the documents pertaining to Mr. Tillman's loans.

28. SunUp, either directly or through its contractors, performs virtually all of the activities related to Balance Credit's lending business – including collection, servicing, payment, and remittance operations.

29. Mr. Tillman used the proceeds from the loans to make personal and household purchases.

30. Therefore, the alleged balances due on the loans meet the definition of "debt" under the FCCPA, Fla. Stat. § 559.55(6).

31. Fla. Stat. § 687.02(1) renders an extension of credit made at interest rates **greater than 18%** per year usurious.

32. Fla. Stat. § 687.071(3) renders an extension of credit made at annual interest rates **greater than 45%** a third-degree felony.

33. Fla. Stat. § 687.071(7) renders an extension of credit with an annual interest rate exceeding 25%, and logically any debt stemming from such extension of credit, void and unenforceable.

34. Any person who willfully makes extensions of credit with annual interest rates exceeding 25% forfeits the right to collect payment for the extensions of credit because such extensions of credit are "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

35. Under Florida law, even the recovery of the principal balance on extensions of credit made with annual interest rates exceeding 25% is impermissible. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

36. The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

37. Because the loans were subject to an annual interest rate that exceeds even the 45% limit as proscribed in Fla. Stat. § 687.071(3), the balances were void *ab initio* and unenforceable pursuant to Fla. Stat. § 687.071(7).

38. The balances on the loans are therefore "unlawful debts" per Fla. Stat. § 772.102(2)(a)(3) and 18 U.S.C. § 1961(6).

39. Any amount repaid on an illegal, usurious debt deemed void *ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

### SunUp Engages in Rent-a-Bank Scheme with CCB

40. Balance Credit is owned by SunUp, which is a subsidiary of Braviant Holdings ("**Braviant**"), a Chicago-based "FinTech" firm which has attracted close to $100 million of investment[1].

---

[1] Braviant is also a Managing Member of SunUp Financial, LLC.

41. The CEO of Braviant Holdings is Matt Martorello ("**Martorello**"), a businessman with a checkered history involving several different predatory lending schemes.

42. Perhaps most dubious among these lending schemes was Martorello's use of a small Native American tribe in Michigan to act as the straw owner of an online lender called Big Picture Loans, which made online payday loans at interest rates typically exceeding 700% annually.

43. Martorello, through a maze of different shell companies and subsidiaries, essentially controlled the "tribal" lending business ostensibly owned by the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "**Tribe**"). The Tribe would receive roughly two cents on the dollar of revenue, with Martorello-controlled entities receiving the remainder.

44. The $0.02 on the dollar was the "rent" of the "rent-a-tribe" scheme; beyond this, the Tribe had virtually no involvement in the underwriting, collection, funding, or management of Big Picture Loans. *See Williams v. Big Picture Loans, LLC*, Civil Action No. 3:17-cv-461 (E.D. Va. Jul. 12, 2021).[2]

45. This time, however, Martorello engineered a "rent-a-bank" scheme rather than "rent-a-tribe."

46. In place of the Tribe, Martorello substituted CCB, a single-branch bank located in Provo, Utah.

---

[2] In December 2020, a court approved an $8.7 million class action settlement which returned unlawfully-charged interest to consumers.

47. SunUp, doing business as Balance Credit, makes loans at interest rates between 100% and 700% annually – rates which constitute criminal usury in the majority of states, including Florida.

48. In states which allow SunUp to charge triple-digit interest rates, SunUp makes loans in its own name; in states which expressly prohibiting loansharking, which includes Florida, SunUp claims to "partner" with CCB.

49. Purportedly, CCB originates the loan and then immediately assigns the loan to Braviant, which then re-assigns it to SunUp.

50. Braviant and SunUp then "service" the loan in all aspects.

51. At no point is CCB the true lender of the Balance Credit loans nor is any capital belonging to CCB at risk.

52. "Rent-a-bank" schemes simply allow predatory lenders like Braviant and SunUp to make loans to consumers in states which prohibit usury, including Florida, with a legal smoke screen.

53. CCB essentially rents its name and status as a state-chartered bank to SunUp, a non-bank entity.

54. Other than lending its name, CCB has virtually nothing to do with the loans and lines of credit that SunUp makes.

55. At no point was CCB the true lender of Mr. Tillman's Balance Credit loans.

56. CCB's capital was not at risk for the loans.

57. SunUp simply engaged in a "rent-a-bank" scheme, just as Martorello had engaged in a "rent-a-tribe" scheme a decade earlier.

58. Pursuant to the National Bank Act, 12 U.S.C. § 85, a chartered bank can make loans in other states at interest rate limits imposed by its home state.

59. CCB is a chartered bank that can make loans at interest rates up to the maximum allowed by its home state of Utah.

60. Conveniently, Utah does not have a specifically defined interest rate limit for private parties.

61. Instead, Utah Statutes simply prohibit unconscionable consumer lending and render any such loans void. *See* UCA § 70C-7-106; *Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996).

62. Thus, by CCB claiming to be the "true lender" of Mr. Tillman's loans, Balance Credit asserts its loans are exempt from Florida's criminal and civil statutes prohibiting usury.

63. Nonetheless, CCB is not the "true lender" of Mr. Tillman's loans.

64. CCB simply receives a guaranteed fee, per loan, for renting its name and status as an FDIC-insured bank to SunUp, which is, upon information and belief, roughly 5% of the original amount of the loan.

65. CCB is paid the guaranteed fee irrespective of whether the consumer ever repays the loan.

66. SunUp also indemnifies CCB against any losses.

67. In a complex series of transactions utilizing several different limited liability companies, money "loaned" by CCB is immediately repaid to it by SunUp and its affiliates.

68. SunUp and its affiliates then acquire "servicing" rights for the loan and collect usurious interest and fees from consumers.

69. SunUp maintains a cash collateral account with CCB, an alternative collateral account, and letters of credit that benefit CCB.

70. This provides three extra layers of protection for CCB, at the expense of SunUp, to ensure that CCB loses no money even if a loan the bank "made" does not perform.

71. Consumers who are looking to obtain financing from SunUp must apply at www.BalanceCredit.com and not through CCB's own website.

72. SunUp, not CCB, has the predominant economic interest in loans made to consumers like Mr. Tillman, and thus, SunUp is the true lender of Mr. Tillman's loans. *See Fulford v. Marlette Funding, LLC,* No. 17CV30376 and *Fulford v. Avant of Colorado, LLC*, No. 17CV30377 (Colo. Dist. Ct. Denver County Aug. 13, 2018); *see also, e.g.*, *State Bank v. Strong*, 651 F.3d 1241 (11th Cir. 2011); *Easter v. Am. W. Fin.,* 381 F.3d 948, 957 (9th Cir. 2004); *CFPB v. CashCall, Inc.,* No. CV 15-7522-JFW (RAOx), 2016 WL 4820635 (C.D. Cal. Aug. 31, 2016); *Penn v. Think Fin., Inc.*, No. 14-cv-7139, 2016 WL 183289 (E.D. Pa. Jan. 14, 2016); *Goleta Nat'l Bank v. Lingerfelt*, 211 F. Supp. 2d 711 (E.D. N.C. 2002); *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300 (W. Va. May 30, 2014) (memorandum decision); *Ubaldi v. SLM Corp.*, 852 F. Supp. 2d

1190 (N.D. Cal. 2012); and *Eul v. Transworld Sys.*, No. 15 C 7755, 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017).

73. CCB engages in similar "rent-a-bank" schemes with many other FinTech entities, including LoanMe LLC, an online lender which makes loans at over 200% annual interest and was founded by John Paul Reddam; Reddam also founded CashCall which operated on a "rent-a-tribe" model and has been sued by the United States government as well as at least 10 different state attorneys general.

74. RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1691(4) 102.

75. In *Boyle v. United States*, the Supreme Court recognized that RICO's definition of enterprise was "obviously broad" and included an "association in fact" enterprise. 556 U.S. 938, 944 (2009).

76. Thus, an enterprise may be a legally recognized entity like a corporation or an "association in fact enterprise," *i.e.*, "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Boyle*, 556 U.S. at 948 ("[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose.").

77. Here, Defendants are an association in fact enterprise who are associated together for the common purpose of making, collecting, and profiting off illegal loans.

78. Mr. Tillman has suffered severe emotional distress as a result of the Defendants' attempts to collect unenforceable accounts and causing his bank account to incur overdraft fees.

79. Mr. Tillman has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF RICO – 18 U.S.C § 1962(c)

80. Mr. Tillman incorporates Paragraphs 1 – 79 as if fully restated herein.

81. The Defendants, through their common purpose of engaging in a course of conduct to profit from BalanceCredit.com, constitute an "enterprise" under RICO, 18 U.S.C. § 1961(4).

82. The Balance Credit loans to Mr. Tillman were "unlawful debts" pursuant to 18 U.S.C. § 1961(6) because they are unenforceable under Florida's laws regarding usury and were incurred in connection with Defendants' business of lending money at a usurious rate that vastly exceeds what is allowed under Florida law.

83. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, which existed for the purpose of collection of an unlawful debt.

84. The Defendants' participation in the enterprise violated **18 U.S.C. § 1962(c)** and caused Plaintiff to incur costs directly and proximately related to their attempts to collect unlawful extensions of credit.

85. The Defendants utilized the internet, telephone, and/or mail to reach across state lines in the operation of the BalanceCredit.com platform, through:

    a. collection calls;

    b. credit reporting;

    c. electronic mail; and,

    d. ACH deposits to Mr. Tillman's Florida bank account.

86. Accordingly, the Defendants are jointly and severally liable to Mr. Tillman for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT II
## VIOLATIONS OF RICO – 18 U.S.C § 1962(d)

87. Mr. Tillman incorporates Paragraphs 1 – 79 as if fully restated herein.

88. The Defendants violated **18 U.S.C § 1962(d)** by conspiring with each other, and other persons, to issue and collect unlawful debts through the BalanceCredit.com lending platform.

89. The Defendants each took actions in furtherance of this conspiracy when they, at various times, did the following:

    a. issued the Balance Credit loans to Mr. Tillman;

    b. initiated ACH deposits and withdrawals to and from Mr. Tillman's bank account;

  c. attempted collection of the credit lines through emails to Mr. Tillman;

  d. attempted collection of the credit lines through phone calls to Mr. Tillman; and/or,

  e. claimed CCB ownership of BalanceCredit.com accounts to provide a guise of issuance from a bank.

90. The Defendants also each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through BalanceCredit.com.

91. The Defendants utilized the internet, telephone, and/or mail to reach across state lines in furtherance of their conspiracy.

92. Accordingly, the Defendants are jointly and severally liable to Mr. Tillman for treble damages, costs, and attorney's fees pursuant to 18 U.S.C. § 1964(c).

## COUNT III
## VIOLATIONS OF THE FCCPA – FLA STAT. § 559.72(9)

93. Mr. Tillman incorporates Paragraphs 1 – 79 as if fully restated herein.

94. The Defendants knew the annual interest on the Balance Credit loans made to Mr. Tillman exceeded 45% in violation of Fla. Stat. § 687.071(3).

95. The Defendants' knowledge of the illegal nature of the loans is evinced by the great lengths they have gone through in an attempt to avoid Florida law by use of a "rent-a-bank" scheme.

96. The Defendants attempted to enforce the unlawful debts and/or asserted the legal right to enforce the unlawful debts when they:

      a. attempted collection of the Balance Credit loans via emails to Mr. Tillman;

      b. attempted collection of the Balance Credit loans via calls to Mr. Tillman; and,

      c. initiated ACH debits from Mr. Tillman's checking account in an attempt to obtain payment.

97. The Defendants' actions were willful, intentional, and done for the express purpose of collecting an unenforceable debt from Plaintiff and profiting from such collection.

98. Accordingly, the Defendants are jointly and severally liable to Plaintiff for his actual damages including all principal and interest repaid to the Defendants and all overdraft fees Plaintiff incurred as the result, and statutory damages of up to $1,000.00, punitive damages, costs, and attorney's fees pursuant to Fla. Stat. § 559.77.

## COUNT IV
## VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(3)

99. Mr. Tillman incorporates Paragraphs 1 – 79 as if fully restated herein.

100. The Defendants, through their participation in the BalanceCredit.com lending platform, constitute an "enterprise" under CRCPA, Fla. Stat. § 772.102(3).

101. The Defendants each associated with the enterprise and participated in the affairs of the enterprise, directly or indirectly, for the purpose of the collection of unlawful debt.

102. The Defendants' participation in the enterprise violated **Fla. Stat. § 772.103(3)** and caused Plaintiff to repay amounts and incur fees as the direct result of Defendants' attempts to collect payment on unlawful loans.

103. Accordingly, the Defendants are jointly and severally liable to Mr. Tillman for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## COUNT V
## VIOLATIONS OF THE CRCPA – FLA. STAT. § 772.103(4)

104. Mr. Tillman incorporates Paragraphs 1 – 79 as if fully restated herein.

105. The Defendants violated **Fla. Stat. § 772.103(4)** by conspiring with each other and/or endeavoring to issue and collect unlawful debts through the BalanceCredit.com lending platform.

106. The Defendants each took actions in furtherance of this conspiracy when they, at various times, did the following:

   a. issued the Balance Credit loans to Mr. Tillman;

   b. initiated ACH deposits to Mr. Tillman' bank accounts;

   c. made attempts to withdraw money via ACH;

   d. attempted collection of the credit lines through emails to Mr. Tillman;

   e. attempted collection of the credit lines through phone calls to Mr. Tillman; and/or,

   f. claimed CCB ownership of BalanceCredit.com accounts to provide a guise of issuance from a bank.

107. The Defendants also each agreed to the overall objective of the conspiracy – to issue and collect unlawful loans through BalanceCredit.com

108. Accordingly, the Defendants are jointly and severally liable to Mr. Tillman for treble damages, costs, and attorney's fees pursuant to Fla. Stat. § 772.104(1).

## PRAYER FOR RELIEF

**WHEREFORE,** Mr. Tillman respectfully requests that this Honorable Court enter judgment against the Defendants, jointly and severally, as follows:

A. An award of actual, punitive, and statutory damages as pled herein;

B. An award of attorneys' fees, litigation expenses, and costs of suit;

C. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Tillman hereby demands a jury trial on all issues so triable.

Respectfully submitted this September 2, 2022, by:

**SERAPH LEGAL, P. A.**
/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar # 1015954
BMorgan@SeraphLegal.com
/s/ *Thomas M. Bonan*
Thoma M. Bonan, Esq.
Florida Bar # 118103
TBonan@SeraphLegal.com
1614 N. 19th St.
Tampa, FL 33605
Tel: 813-567-3434
Fax: 855-500-0705
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A    Plaintiff's Loan Agreement with Balance Credit, dated February 23, 2021
B    Plaintiff's Loan Agreement with Balance Credit, dated July 26, 2021
C    Plaintiff's Loan Agreement with Balance Credit, dated November 29, 2021